EDWARD LOEHR, APPELLEE, V. ALAMITO DAIRY COMPANY, APPELLANT.

275 N. W. 596

FILED OCTOBER 29, 1937. No. 30145.

445.

*Kennedy, Holland, DeLacy & Svoboda* and *Edwin Cassem,* for appellant.

*James J. Fitzgerald, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ.

CARTER, J.

Plaintiff commenced this action under the workmen's compensation law to recover for the loss of an eye alleged to be the result of an accident arising out of and in the course of his employment with the Alamito Dairy Company. The trial court awarded compensation for a 90 per cent. loss of function of plaintiff's left eye, the award being for a total loss of the eye minus a preexisting 10 per cent. loss of function of the same eye. From this award, the defendant has appealed.

The defendant contends that plaintiff failed to prove his case in two respects, first, that plaintiff suffered an accident while in defendant's employ, and, second, if he did suffer such an accident, that it was the proximate cause of the loss of vision for which compensation is claimed.

It appears from the record that in May, 1933, the plaintiff, while working on a farm in Iowa, was injured by a piece of steel entering his left eye. He was brought to Omaha where he was treated by Doctors Stokes and J. H. Judd, both of whom appeared as witnesses in the case at bar. Dr. William Stokes attempted to remove the steel splinter without success and recommended the removal of the eye because of the danger of subsequent complications that might destroy the uninjured eye. Plaintiff refused to have the eye removed. The eye improved and the plaintiff subsequently began work for the defendant. On September 7, 1935, plaintiff ceased work for the purpose

of going to a hospital for an operation upon the previously injured eye. The record discloses that Dr. J. H. Judd, the attending physician, diagnosed the trouble as a retinal detachment. On September 25, 1935, Dr. Harold Gifford attempted to reattach the retina by an operation upon the eye. The operation was not successful and the plaintiff is now totally blind in the left eye.

Plaintiff testified that on September 2, 1935, while in the employ of defendant, he suffered a bump upon his head which is alleged to have been the proximate cause of the retinal detachment. It appears that it was his duty to enter a condenser through a manhole and wash and scrape the coils of pipe within it. It was necessary for him to bend low to do this work which was made difficult because of the closeness of the quarters. His testimony is that, in doing this work, one foot slipped on the rounded bottom of the condenser and he bumped his head just back of the left eye on a pipe projecting into the condenser. This accident is alleged to be the primary cause of the injury of which he complains. There was no witness to the accident and no report of it was made to the defendant at the time. The only evidence tending to corroborate plaintiff's story is that of his wife who testified that when plaintiff returned home that evening his head appeared swollen just back of the left eye.

Defendant produced evidence that plaintiff, on September 7, 1935, talked with the plant superintendent about the condition of his eye, in which he stated that his physician had informed him that he had a retinal detachment resulting from a bump upon his head, and, in response to a question by the superintendent, stated that he had not bumped his head while working for defendant. In reply thereto plaintiff testified that he told the superintendent on this occasion of the injury received while working in the condenser. Defendant also produced the evidence of two officers of the Employees Benefit Association, a voluntary association of employees providing relief to sick and injured employees not within the provisions of the work-

men's compensation act. Both of these men testified that they interviewed plaintiff in the latter part of August or the first part of September, 1935, about his eye trouble and that he informed them that he had been injured at home by stepping on a garden rake which flew up and struck him alongside of the nose and injured his eye. Plaintiff admits that he received a broken nose by stepping on the garden rake but says that this occurred more than six years before the date of the present injury. The history of the case taken by Doctors Judd, Stokes and Gifford does not reveal any claim of an accident on the part of plaintiff while in defendant's employ until November 14, 1935. On this date a notation appears in the record of Dr. Delbert Judd to the effect that the patient said he bumped his head five weeks ago against a staircase. Plaintiff came back on the stand and testified that he bumped his head on the staircase leading up to the condenser platform within one hour after he bumped his head while washing the condenser and that it was the injury received in the condenser that was the more severe and the cause of his injury.

It appears from the evidence of the eye specialists testifying in this case that, after the injury to the eye in 1933 and the subsequent failure to remove the steel splinter, natural processes walled off or encysted the steel splinter within the eye. Dr. Stokes testified that he attempted to remove the steel splinter in 1933 and, not being able to do so, recommended the removal of the eye for the reason that complications were bound to come sooner or later which might seriously damage the uninjured eye. Dr. Stokes also testified that the steel splinter was the cause of the detached retina, that it was bound to occur sooner or later, and that the alleged trauma to the head was merely coincidental with the development of the condition resulting in the detachment of the retina. He further testified that the steel splinter was reduced in size during the two years it was imbedded in the eye and that this breakdown of the foreign body would produce a low-grade inflammatory reaction in the retina which would ultimately cause a

detachment of the retina. The evidence of Dr. Gifford is substantially the same as that of Dr. Stokes.

The testimony of Dr. J. H. Judd is to the effect that the steel splinter would cause plaintiff no harm after it became encysted, in the absence of trauma. He also testified that during August, 1935, plaintiff suffered from sinus infection that required a drainage of the sinuses by operative surgery. After the operation the sinuses cleared up, but plaintiff's left eye was inflamed to such an extent that medical treatment was continued. This condition existed prior to the date of the alleged accident and continued until it was diagnosed on September 4, 1935, as retinal detachment. Plaintiff offered in evidence quotations from medical text-books citing instances where steel and copper foreign bodies had been retained in the eye for many years and even for a lifetime. An examination of these authorities convinces us that they were cited as rare exceptions to the general rule that an eye containing a steel or copper splinter generally breaks down as a result thereof in a much less period of time. One text offered in evidence states: "Four dangers threaten the eye containing iron or copper particles in the retina: 1. Retinal detachment. 2. Recurring severe attacks of inflammation. 3. A new form of inflammation which leads to retinal degeneration and blindness. * * * 4. Changes at the macula." Injuries of the Eye, Harry Vanderbilt Wurdemann, p. 606.

It is necessary, in order that plaintiff be entitled to recover, that he prove by a preponderance of the evidence that he suffered an accident arising out of and in the course of his employment which resulted in the injuries for which he claims an award. This the plaintiff has failed to do. The only proof in the record that plaintiff suffered injury while in the employ of defendant is the evidence of the plaintiff himself. His testimony that he was injured while working in the condenser is impeached by the testimony of the plant superintendent and two officers of the Employees Benefit Association. The medical histories of the case obtained from the plaintiff tend to impeach plaintiff's

evidence and to sustain the theory of the defense. It also appears that a detachment of the retina is a recognized and common result of a retained particle of steel or copper in the retina of the eye.

The evidence indicates that plaintiff had an inflammation of the left eye after the sinus infection had been corrected and prior to the date of the alleged accident which continued until the trouble was diagnosed as a detachment of the retina. The fact that the left eye only was inflamed during this period is indicative of the commencement of the deterioration of the eye before the alleged accident occurred. That inflammation of an eye retaining a steel particle is a sign of an impending retinal detachment seems to be sustained by the testimony and the medical authorities cited. We are therefore convinced, after a consideration of all the evidence, that plaintiff lost the sight of his left eye as a result of the lodging of the steel splinter in his eye in 1933, and that any accident plaintiff may have suffered was merely coincidental to the natural deterioration of an eye containing such a foreign body.

We necessarily conclude that plaintiff has failed to prove by a preponderance of the evidence that he suffered an accident arising out of and in the course of his employment with defendant that resulted in the injury for which an award is sought. The judgment of the trial court is therefore reversed and the action dismissed.

REVERSED AND DISMISSED.